14184

HEARON *ET AL.* v. CALUS *ET AL.*

(188 S. E., 13)

Messrs. *A. H. Dagnall, Osborne & Butler, Gibson & Muller, Carl Kearse* and *Robinson & Robinson,* for plaintiffs,

Messrs. *John M. Daniel, Attorney General, J. Ivey Humphrey* and *M. J. Hough, Assistant Attorneys General,* for E. P. Miller, State Treasurer, and A. J. Beattie, Comptroller General.

Messrs. *John P. Grace, M. L. McCrae, Evans, Galbraith & Holcombe, C. S. Bowen* and *R. B. Hildebrand,* for Robert Gregory and Walter Stilley, Jr.

*Messrs. Hagood, Rivers & Young,* for Citizens & Southern Bank of South Carolina.

*Messrs. Herbert & Dial,* for the South Carolina National Bank.

*Mr. Chas. B. Elliott,* for Lower Main Street Bank.

December 5, 1936.

*Per curiam.*

The 28th day of October, 1935, Governor Johnston issued his proclamation by which he declared a state of "rebellion, insurrection, resistance and insurgency to be in existence against the laws of the State of South Carolina in connection with the operation, policing, management, and general control of the highways of this State coming under the jurisdiction and control of the State Highway Department. * * *" He ordered "the militia of this State to immediately take charge of all highways of this State coming under the management, control, supervision, or jurisdiction of the State Highway Department, or the State Highway Commission, and to take immediate charge of all highways, bridges, ferries, offices, buildings, shops, plants, work under construction and property of any and every nature, kind or description including all records wheresoever found or situated coming under the control or belonging to the State of South Carolina, which is under the jurisdiction, management or control of the State Highway Commission of this State, specifically including all money or evidence of money, choses in action or funds wheresoever found within the borders of this State, specifically including all cash money, funds, accounts, evidences of money, deposits or warrants in the direct or indirect care, custody, or control of the South Carolina Tax Commission, the State Treasurer of South Carolina, the Comptroller General of South Carolina, and any and all banks, depositories, or other institutions, commissions, persons, firms or corporations, or any other source which might have direct or indirect custody or control of such funds."

The proclamation proceeds to declare all persons, firms, officers, corporations, commissions, banks, depositories, and all the agencies enumerated in the proclamation to be in a state of "insurrection, rebellion and insurgency against the laws and constituted authority of the State and to be subject to the control by the militia of the State, and any and all employees of the State Tax Commission, the State Treasurer's office, the Comptroller General's office, and the employees of any and all banks and depositories, commissions, persons, firms, or corporations to be subject to the orders of the said militia in connection with their action directly or indirectly and in any manner relating to the said property of the State Highway Department and the State Highway Commission."

The proclamation further commands all persons connected with and exercising or attempting to exercise jurisdiction as Highway Commissioners, and employees thereof, especially the Chief Highway Commissioner, to cease to exercise any and all actions and functions thereabout, to vacate the offices, buildings, etc., and forthwith to surrender to those in command of the militia all property, credentials, records, books, and documents of the highway commission.

The proclamation then suspends the writ of *habeas corpus* in connection with any person violating any provision of the proclamation.

The morning of October 28, 1935, the defendants Joe Calus, Wade Sanders, Francis Drake, Robert Gregory, W. M. Smoak, and Walter Stilley, Jr., took possession of the offices and properties of the State Highway Commission. The militia under Major Frank Barnwell took possession of the State office building, in which is the office of the State Highway Commission, planted machine guns at the principal entrances of the building, posted sentinels and denied to the members of the highway commission entrance to their office, and prevented it.

By order issued October 28, 1935, the Governor named

"Francis Drake, Wade Sanders, Robert Gregory, William M. Smoak and W. A. Stilley, Jr., Consulting Managers, and Joe Calus, Executive Manager, which I have designated as Highway Managers to assist in the suppression and resistance to the laws of the State in connection with the Highway Department and Highway Commission of this State."

The Governor, by written command, directed "Major Frank Barnwell, Commander of Insurrectionary Troops, Columbia, South Carolina, * * * to take possession, management and control of all monies on deposit in the Citizens & Southern Bank of South Carolina, Columbia, South Carolina."

Similar orders were given to the same officer in connection with South Carolina National Bank, and Lower Main Street Bank, Columbia, and were by him executed as to all such banks.

October 30, 1935, the plaintiffs instituted this action in the original jurisdiction of this Court, and on the same day Chief Justice Stabler issued his rule directed to all of the defendants requiring them to show cause before the Supreme Court of the State on the 11th day of November, 1935, why the prayer of the complaint should not be granted. He further ordered that A. J. Beattie, Comptroller General, E. P. Miller, State Treasurer, the Citizens & Southern Bank of South Carolina, the South Carolina National Bank, and the Lower Main Street Bank, be enjoined from paying out or disposing of or permitting the paying out or disposing of, any funds in their possession or control, or which may come into their possession or control belonging to the State Highway Commission, or State Highway Department of South Carolina.

The complaint of the plaintiff alleges: That they are Highway Commissioners from all of the judicial circuits of the State, except the Twelfth; from that circuit, Walter Stilley, Jr., has been acting since the death of W. H. An-

drews, but he has not been confirmed by the Senate; that
the individual plaintiffs have been since their appointment
as Highway Commissioners in active charge of the work
of the State Highway Department; have been duly appointed
by the Governor and confirmed by the Senate, and are en-
titled to perform the duties of Commissioners and be con-
firmed in the possession of their offices and duties; that they
were in the possession of the properties and offices of the
department until the morning of Monday, October 28, 1935,
when the physical offices of the Highway Department in
the State office building, Columbia, S. C., were forcibly and
illegally taken over by the defendants, Joe Calus, Wade
Sanders, Francis Drake, Robert Gregory, W. M. Smoak,
and Walter Stilley, Jr., who have no right to the possession
of the highway properties, or of the offices of the depart-
ment, but have with force and arms taken possession of the
affairs of the State Highway Department; that E. P. Miller
is the duly constituted State Treasurer, and A. J. Beattie the
duly constituted Comptroller General of South Carolina and
as such officers have in their charge and legal control the
funds of the State Highway Department, except in so far
as they have been interfered with by the defendants, Joe
Calus, Wade Sanders, Francis Drake, Robert Gregory, W.
M. Smoak, and Walter Stilley, Jr. That when Joe Calus,
Wade Sanders, Francis Drake, Robert Gregory, W. M.
Smoak, and Walter Stilley, Jr., took physical possession of
the offices of the State Highway Department, they attempted
to discharge the employees of the State Highway Depart-
ment—about 2,000 in number—and by force and arms are
compelling these employees, or attempting to compel them,
to submit their resignations effective November 15, 1935;
they allege on information and belief that the six named de-
fendants have forced out of office the Chief Highway Com-
missioner, the secretary and treasurer of the highway com-
mission, and the director of the motor vehicle license divi-
sion, and that these same named defendants have illegally

usurped the functions and duties of the highway department, the Highway Commission, and of the Chief Highway Commissioner, and are selling licenses and receiving money from the public. That, on information and belief, these six named defendants propose to expend moneys of the State Highway Department by issuing vouchers and warrants through the Comptroller General and the State Treasurer, in violation of law, unless restrained, thus seriously jeopardizing the finances of the State Highway Department, and the State of South Carolina, and the credit of the State by using receipts from gasoline and motor license taxes, which have been pledged to secure the bonded indebtedness of the highway department, thereby causing a default of the bonded indebtedness of the highway department, large financial loss to the taxpayers, and necessitate the levying of a property tax on all real and personal property in the State. That the actions of these six named defendants seriously interfere with the work of the highway department, jeopardize the allotment of federal. funds for road building, adversely affect the contracts of the highway department, interfere with projects for which bids have been advertised, seriously interfere with construction work under way, jeopardize the lives and safety of persons using the highways, and, if not restrained, will cause the loss of hundreds of thousands of dollars to the State, and the disruption of the entire program of the State Highway Department.

That some of the results of the illegal and high-handed conduct of the said six defendants, which they threaten to continue and which plaintiffs allege on information and belief they will continue, if not restrained by the Court, are: (a) The motor vehicle license fees, which are collectible by the State Highway Department, are being jeopardized, and will be jeopardized. (b) That the people will have no one to whom they can legally pay said fees. (c) That contract obligations, legally entered into by the highway department,

due to said illegal interference cannot be met and discharged, and said department will incur liabilities for damages resulting therefrom. (d) That plaintiff will be prevented from collecting and conserving sufficient funds to meet maturing bond obligations, both principal and interest, thus producing a condition which will require the levy of a general property tax to pay said obligations. (e) That plaintiffs are charged with the duty of paying these obligations, but will be unable to do so if these named defendants are allowed to continue their illegal and high-handed interference. (f) That plaintiffs are charged with the duty of maintaining a system of highways that cost in excess of $100,000,000.00 and if not properly maintained, the department will be mulcted in heavy damages; and these said defendants will continue to interfere with the discharge of this duty if not restrained.

That Joe Calus, Wade Sanders, Francis Drake, Robert Gregory, W. M. Smoak, and Walter Stilley, Jr., have not been appointed State Highway Commissioners in accordance with the laws of South Carolina, and have no right to perform any of the duties of the State Highway Department, or any of the duties of plaintiffs, or to do any of the things complained of herein, and are acting in direct violation of the statutory law of the State of South Carolina.

That the named six defendants have acted, are acting, and will continue to act in the particulars herein set out, in violation of law, in derogation of the rights of plaintiffs as commissioners, interfering with the duties and privileges of these plaintiffs as fixed by statute, and in derogation of the rights of plaintiffs and other taxpayers of the State which will result in irreparable damage to the plaintiffs and to the State, unless restrained by the Court. These plaintiffs have no adequate remedy at law against these wrongs complained of and therefore ask the intervention of the Court of Equity to restrain and enjoin the wrongful acts from being done and threatened, and further ask that the Court adjudicate their rights both as commissioners and as taxpayers, and

confirm plaintiffs' title and right of possession to the office of Highway Commissioners from their respective circuits. They further allege on information and belief that the Citizens & Southern Bank of South Carolina, the South Carolina National Bank and the Lower Main Street Bank have on deposit $1,800,000.00 of State Highway Department funds, which have heretofore been in the possession of and subject to the control of the State Treasurer and the Comptroller General, both of whom are duly bonded, and subject to the control of duly bonded employees of the State Highway Department. They allege on information and belief that these banks on October 29, 1935, under the direction of the defendant Joe Calus, transferred these funds to new accounts, subject to the control of Joe Calus and certain of his codefendants other than the State Treasurer and Comptroller General, in violation of law, and he and his codefendants threaten to draw on these funds and to illegally use same; and the said banks have signified their intention to honor such drafts unless restrained by this Court.

The prayer of the complaint is that the Court restrain the defendants, their agents, servants, and employees, and all other persons from paying out any of the funds of the State Highway Department. That the defendants, Joe Calus, Wade Sanders, Francis Drake, Robert Gregory, W. M. Smoak, and Walter Stilley, Jr., their agents, servants, successors, or employees and all others be enjoined and restrained from performing, or attempting to perform any of the duties of the State Highway Department, and enjoined from interfering in any way with the affairs, moneys, or properties of the State Highway Department. They pray further that their title to the offices of commissioners from their respective judicial circuits be confirmed and that their possession thereof be established, and that the Court adjudge that Joe Calus, Wade Sanders, Francis Drake, Robert Gregory, W. M. Smoak, and Walter Stilley, Jr., have no title or right to possession of any office in the Highway De-

partment, and no authority to exercise any of the functions or duties pertaining to the Highway Department.

At the hearing before this Court November 11, 1935, the defendants, Robert Gregory and Walter Stilley, Jr., appearing solely for that purpose, not submitting to the jurisdiction of the Court, but expressly reserving all of their rights, moved to quash the rule to show cause and dismiss the action upon the grounds:

1. That the defendants, Joe Calus, Wade Sanders, Francis Drake, Robert Gregory, W. M. Smoak, and Walter Stilley, Jr., are now and have been since October 28, 1935, volunteers in the military service of the state under the order and proclamation of the Governor, and are therefore immune to service of civil process in all the Courts of the State.

2. That this Court nor any other Court of the State has jurisdiction of the subject-matter of the action for the reason that all matters and things connected with the Highway Department and the State Highway Commission are, since the proclamation of the Governor, under his sole and exclusive jurisdiction and control as commander-in-chief of the military forces, during which military control the Courts of the State can have no jurisdiction of the matters and things therein set forth.

3. That the defendants above named, constituting a military board under the direct orders of the commander-in-chief of the militia, aided and supported by reinforcements from the National Guard of the United States are the agency and representatives of the Governor for the purpose of protecting, operating, and controlling the business of the State Highway Department and the State Highway Commission, until the emergency mentioned in the Governor's proclamation shall have terminated. That until that time this Court has no jurisdiction of the subject-matter nor of the personnel of said board.

4. That the State Treasurer, the Comptroller General and the banks named in the rule to show cause have no interest in the matter.

For the reasons hereinafter stated, the motion to quash the rule to show cause and dismiss the action is refused.

Robert Gregory and Walter Stilley, Jr., made return to the rule to show cause, reserving their right to object to the jurisdiction of the Court, not waiving, but expressly reserving, their rights under the motion to quash the rule to show cause, and without submitting to the jurisdiction of the Court.

Following are the defenses set out:

First defense is a general denial.

Second defense, denies Paragraph 1 and avers that the plaintiffs' C. F. Rizer, E. T. Heyward, Ralph J. Ramer and W. Fred Lightsey are not now, and were not at the commencement of this action, State Highway Commissioners, their terms having expired April 15, 1935, and their successors having been duly appointed, qualified, commissioned, taken possession of their respective offices and entered upon the performance of the duties thereof, but not yet confirmed by the Senate, it not being in session, in like manner to the defendant Walter Stilley, Jr. Denies Paragraph 2 and alleges upon information and belief that the change of possession of the physical properties, offices, etc., was done by others than these defendants, under the proclamation of the Governor. As to Paragraph 3 of the complaint, they admit so much as alleges that E. P. Miller is State Treasurer and A. J. Beattie is Comptroller General, and deny all the other allegations of the paragraph. Answering Paragraph 4 of the complaint, they deny each and every allegation, except as admitted; that the State Highway employees named therein were discharged by the Governor's proclamation; that no force, duress, or compulsion has been employed by defendants herein. That the director of the motor vehicle division was discharged for disobedience to orders, and another was substituted in his stead; and no other substitution of employees has been made except some additions in this department to assist in the emergency of

selling license tags. Resignations have been required and received from employees so that any disorder, rebellion, or lack of co-operation .might be dealt with promptly for the best interest of the people of South Carolina, it not being known to what extent the infidelity of the former State Highway Commission and its Chief Highway Commissioner may have permeated and contaminated the State Highway Department: They deny specifically and emphatically each and every allegation of Paragraph 5 of the complaint. Answering Paragraphs 6, 7, 8 and 10 of the complaint, they deny each and every allegation thereof. Further answering, that the Governor, following his proclamation, appointed, designated and deputized Francis Drake, Wade Sanders, Robert H. Gregory, William M. Smoak, and W. A. Stilley, Jr., as consulting managers and Joe Calus as executive manager, as a board to assist him in executive control of this department during the emergency referred to in the proclamation, and that any and all matters, duties, obligations, and burdens heretofore resting upon or abiding in the plaintiffs as a State Highway Commission have been and are now being fully, amply, and properly cared for and discharged by the Governor of the State, "and each and every of the fears, surmises and fanciful grievances of the plaintiffs in connection with the proper and efficient discharge of said duties and obligations are, have been, and will continue to be properly, legally and completely performed and discharged."

For a third defense: First, that the plaintiffs in this action are not eligible to hold the offices involved because they are in a state of rebellion and insurrection against the State of South Carolina and her duly constituted authorities, and consequently against the United States of America as shown by the proclamation referred to, the laws of this State and under the Fourteenth Amendment of the Constitution of the United States.

For a fourth defense: 1. Paragraphs 1 and 2 of the preceding defense are referred to and adopted.

2. That plaintiff's, being in a state of rebellion against this State and her duly constituted authorities, cannot invoke the aid of her Courts in an effort to further their unlawful acts aforesaid, or for any other purpose, against these defendants who are citizens of this State and of the United States of America, and were so at the time this action was instituted.

The defendants E. P. Miller, State Treasurer and A. J. Beaty, Comptroller General, made formal return to the rule to show cause through the Attorney General of the State. They show that they neither affirm nor deny the allegations of Paragraphs 1 and 2 of plaintiffs' complaint; they admit Paragraph 3; upon information and belief they admit Paragraph 4 as a correct statement of facts, but do not admit conclusions of law; admit Paragraph 5 on information and belief; on information and belief admit Paragraph 6 as correct statement of fact, but neither affirm nor deny any conclusions of law stated therein. They admit upon information and belief all of Paragraphs 7 and 8 of the complaint except references therein to Walter Stilley, Jr., as to him or his title to office, and they express no opinion as to the plaintiffs' request that this Court "confirm plaintiffs' title and right of possession of the offices of Highway Commissioners from their respective Circuits," as they are informed and believe that the question of the title to these offices is now before the Court. They admit Paragraph 10 of the complaint.

The return of the South Carolina National Bank sets forth that: It has no knowledge or information sufficient to form a belief as to the allegations of Paragraphs 1, 2, 4, 5, 6, 7, and 8 of the complaint. As to the allegations of Paragraphs 3 and 10 (there is no Paragraph 9), this respondent alleges on information that Paragraph 3 is true; that as to Paragraph 10, this respondent had on the 29th day of October, 1935, certain Highway Department funds on deposit, subject to the control of the State Treasurer and the Comptroller General and the officers of the State

Highway Department, and that on the 29th day of October, 1935, Joe Calus, purporting to act under the direction of the Governor of South Carolina, and accompanied by an armed escort, came into the South Carolina National Bank and demanded the transfer of the aforesaid funds heretofore and then, on deposit in the said bank, to the credit of the State Treasurer and Joe Calus, executive manager of the State Highway Department; and that this respondent, believing that it was so authorized, made said transfer accordingly; but that thereafter learning of the ruling of the Attorney General of South Carolina, and upon demand of the State Treasurer, restored said funds to their original status, and since the restraining order herein has held and is holding said funds intact and subject to the order of this Court. By way of further return shows that it stands ready in all matters to obey the findings, rulings, and orders of this honorable Court.

The Lower Main Street Bank made return to the rule as follows: It has no knowledge nor information sufficient to form a belief as to the allegations contained in Paragraphs 1, 2, 3, 4, 5, 6, 7, 8, and 9 of the complaint. Answering the allegations of Paragraph 10, the respondent avers that it is a banking corporation under the laws of this State; that it has on deposit certain funds deposited in the account of "State Treasurer—Highway Department Funds," and that said deposit, on information and belief, is subject to the control and checks of the State Treasurer. This respondent admits on information and belief that the State Treasurer and Comptroller General are duly bonded; it denies that the said deposit was transferred by the codefendant Joe Calus to a new account, and that this respondent has signfied its intention of honoring drafts or checks drawn on said funds by Joe Calus and his codefendants. This respondent has no knowledge nor information sufficient to form a belief as to the other allegations of Paragraph 10. This respondent prays that it be directed as to its rights

and duties in the premises in order that it may be protected in the disbursement of these funds.

The return to the rule of the Citizens & Southern Bank shows that it admits on information and belief Paragraphs 1, 2, 3, 4, 7 and 8 of the complaint. It denies any knowledge or information sufficient to form a belief as to Paragraphs 5 and 6. Answering Paragraph 10, admits that it is engaged in the banking business and has on deposit to the credit of *"State Treasurer, State Highway Fund, State House, Columbia, S. C.,"* the sum of $722,318.38; denies any knowledge or information sufficient to form a belief as to the remainder of said paragraph, except that of its own knowledge it denies that it has transferred any of the funds held by it on deposit, as aforesaid, to new accounts subject to the control of the defendant Joe Calus, and certain of his co-defendants, or that at present it contemplates such action or to honor drafts or checks drawn upon the said funds by the said Joe Calus, or his codefendants. Further answering said complaint, this defendant alleges that in compliance with the proclamation of the Governor issued October 28, 1935, a copy of which proclamation is hereto attached, and further in compliance with the order of the Governor under date of October 29, 1935, to Major Frank Barnwell, commander of insurrection troops, of which order a copy is attached, this defendant issued and delivered to the defendant Joe Calus, and Major Frank Barnwell, aforesaid, a duplicate deposit slip indicating the funds lodged in the hereinbefore-mentioned account, but were subject also to the control in conjunction with the said State Treasurer of the defendant, Joe Calus, executive manager, State Highway Department, but that no transfer or change in the name has been made on the books of the bank of said account. That this defendant further shows that the duplicate was obtained from this defendant under duress and in fear of military action against the person of the officers, employees, or property of the bank, but that said defendant, upon the advice of counsel, through its

president, has informed the Governor of the State, Major Frank Barnwell, aforesaid, and its codefendant Joe Calus, the Treasurer of the State, and its codefendant W. M. Smoak, that with reference to said account this defendant would not at present recognize the signature of its codefendant Joe Calus, or of the State Treasurer, or of any one until further advised. That this defendant denies each and every allegation of the complaint not hereinabove admitted.

Joe Calus, Wade Sanders, Robert Gregory, Francis Drake, and W. M. Smoak made no return to the rule to show cause and are, therefore, in default. Proof is submitted to the Court that they were duly and legally served with the processes of the Court.

We have been at pains to present full synopses of all pleadings and documents appearing in the proceeding in order that the Court may give them attention. The proceeding is one of gravest importance and presents issues the determination of which will vitally affect the administration of the laws of the State, the public interests and the personal rights and liberties of the citizens of the State.

In the Declaration of Rights, Art. 1, § 14 of the Constitution of 1895, it is provided: "In the government of this State the legislative, executive and judicial powers of the Government shall be forever separate and distinct from each other, and no person or persons exercising the functions of one of said departments shall assume or discharge the duties of any other."

The cardinal question which meets us at the threshold of the consideration of the present case concerns the power of this Court to review the actions of the Governor in proclaiming that a condition of insurrection and rebellion exists, in calling out the militia and declaring martial law.

We hold it to be accepted law that the action of the Governor in declaring that a state of insurrection exists may not be enjoined by this Court, nor reviewed by it.

The supreme executive authority of the State is declared by Section 1, Art. 4 of the Constitution to be invested in a Chief magistrate who shall be styled "The Governor of the State of South Carolina."

The legislative department consists of the Senate and the House of Representatives.

The judicial authority is vested in such Courts as shall be provided by law; of these the Supreme Court is the highest judicial authority.

It is the province of the Legislature to enact laws; it is the province of the Courts to construe the laws; it is the province of the "Executive Authority" to enforce the laws.

The Supreme Court has power to issue writs of injunction, mandamus, *quo warranto,* prohibition, *certiorari, habeas corpus* and other original and remedial writs. Article 5, § 4, Constitution.

"The Governor shall have the power to call out the volunteer and militia forces, either or both, to execute the laws, repel invasions, suppress insurrections and preserve the public peace." Article 13, § 3, Constitution, 1895.

The Governor may call out the militia, "Whenever, by reason of unlawful obstructions, combinations, or assemblages of persons, or rebellion against the authority of the government of this State, it shall become impracticable, in the judgment of the Governor of the State, to enforce, by the ordinary course of judicial proceedings, the laws of the State within any county or counties of the State, it shall be lawful for the Governor of the State to call forth the militia of any or all the counties of the State, and employ such parts thereof as he may deem necessary to enforce the faithful execution of the laws, or to suppress such rebellion." Section 1390, Code 1932.

"Whenever, in the judgment of the Governor, it may be necessary to use the military force hereby directed to be employed and called forth, the Governor shall forthwith,

by proclamation, command such insurgents to disperse and retire peaceably to their respective abodes within a limited time." Section 1391, Code 1932.

"*Insurgent*.—One who participates in an insurrection; one who opposes the execution of the law by force of arms, or who rises in revolt against the constituted authorities." Black's Law Dictionary, page 992.

"*Insurrection*.—A rebellion or rising of citizens in resistance to their government." Black's Law Dictionary, page 992.

The Code of Georgia thus defines what shall constitute insurrection: "Insurrection shall consist in any combined resistance to the lawful authority of the State, with intent to the denial thereof, when the same is manifested, or intended to be manifested, by acts of violence." Penal Code of Ga., 1910, § 55.

With this preliminary statement of the provisions of our Constitution and statutes immediately applicable to the question now to be discussed, we proceed to that discussion.

Counsel for the defendants argue at length that when the Governor exercises his discretion and declares that a state of insurrection exists, his exercise of that discretion cannot be inquired into or controlled by the Courts.

So much is conceded and may not be further considered.

But defendants' counsel go further and argue that none of the acts of the Governor, done after the proclamation which declares the existence of a state of insurrection may be inquired into by the Courts, or interfered with by them. This Court admits that the acts of the Governor, lawfully done in the suppression of the insurrection, are immune from interference with by this Court; but when his acts exceed the authority given him by the Constitution and Statutes and are injurious to the personal liberty and property rights of the citizens of the State, they are open to the inquiry and control of the ju-

dicial arm of the State. Any other construction of the law would lead to anarchy and revolution. If the power of the Governor, after his proclamation of the existence of a state of insurrection, is uncontrolled by any deterrent power of the government and is subject only to his caprice and will, what shall restrain him from depriving a citizen of his property or his liberty? To hold that he has such unlimited power, unrestrained by any force of law, would be subversive of every principle of freedom and liberty, and be an invitation and provocation to the insurrection and rebellion which it is the province and duty of the law to suppress.

Counsel for defendants place much reliance on West Virginia cases, especially those of *State of West Virginia ex rel. Mays v. Brown* and *State of West Virginia ex rel. Nance v. Brown*, 71 W. Va., 519, 77 S. E., 243, 245. Ann. Cas., 1914-C, 1, 45 L. R. A. (N. S.), 996, and *Hatfield v. Graham,* a West Virginia case reported in 73 W. Va., 759, 81 S. E., 533, L. R. A., 1915-A, 175, Ann. Cas., 1917-C, 1.

These cases go far in sustaining the extreme rule for which defendants contend, but it seems that the rule was promulgated when the State was contending with conditions of riot and violence approaching a state of internal war. The opinions were by a divided Court in which Mr. Justice Robinson upheld the almost universal contrary opinion. In an elaborate note to the *Mays* and *Nance cases* contained in 45 L. R. A. (N. S.), 996, the annotator states that these cases have been the subject of much adverse criticism. They are not binding on this Court, nor are their reasoning and conclusions persuasive.

Even the prevailing opinion in the *Nance* and *Mays cases* holds this: "It is only while military government is used as an instrument of warfare that the commander's will is law. *New Orleans v. New York Mail S. S. Co.,* 20 Wall., 387, 22 L. Ed., 354; *Ex parte Milligan,* 4 Wall., 2, 127, 18 L. Ed., 281 [297]. That a military occupation of a territory, in a state of peace and order, differs radically

from the prosecution of a war in the same territory is well established. In *Ex parte Milligan,* cited in the former case, the military is subordinate to the civil power, no matter whether the occupancy under tranquil condition precedes or follows the military operations. *Martial law is operative only in such portions of the country as are actually in a state of war, and continues only until pacification. Ordinarily the entire country is in a state of peace, and, on extraordinary occasions calling for military operations, only small portions thereof become theaters of actual war. In these disturbed areas, the paralyzed civil authority can neither enforce nor suspend the writ of habeas corpus, nor try citizens for offenses, nor sustain a relation of either supremacy or subordination to the military power, for in a practical sense it has ceased. But, in all the undisturbed, peaceable, and orderly sections, the constitutional guaranties are in actual operation and cannot be set aside."* (Italics added.)

In the case now before this Court there is no particle of evidence, nor even suggestion, that there existed a state of war, or anything approaching disorder. It is common knowledge that in the area where a state of insurrection was said to exist, the militia was called out and martial law declared, all was as calm, quiet, and peaceful as a May morn; and the Courts were open and functioning. Under the Governor's proclamation, the defendants, by force and arms, have taken over the offices, the physical offices, books, properties, and all things pertaining to the State Highway Department and the State Highway Commission.

If the Governor, in authorizing these defendants, Joe Calus, Wade Sanders, Robert Gregory, W. M. Smoak, Francis Drake, and Walter Stilley, Jr., to do these things, has exceeded the authority given him by the Constitution and Statutes of the State, it is competent for this Court to review his actions.

The Constitution declares that the military power shall always be subordinated to the civil authority and governed by it. Article 1, § 26.

"In determining whether challenged power has been constitutionally exercised, conditions to which power is addressed must be considered, but extraordinary conditions do not create or enlarge constitutional power and cannot justify action which lies outside sphere of constitutional authority." *A. L. A. Schechter Poultry Corporation v. United States,* 295 U. S., 495, 55 S. Ct., 837, 79 L. Ed., 1570, 97 A. L. R., 947.

"When break down of law and order in community in Minnesota made necessary use of state troops, means employed to restore law and order were largely in discretion of Governor and commanding officer of troops, *and acts of Governor within range of his permitted discretion were not subject to regulation or control by judiciary, although Governor's arbitrary and capricious acts and those having no relation to necessities of situation could be enjoined * * * by the Courts, as any clear abuse of power by an executive may be enjoined,"* (Italics added.) *Powers Mercantile Co. v. Olson, Governor of Minnesota* (D. C.), 7 F. Supp., 865.

"An order of the Governor suppressing an issue of a paper having some circulation in a territory under martial law and tending to incite further disturbance, has been held reviewable by the Courts" 12 C. J., 896.

"The Courts also have the power to determine whether the acts of the executive were authorized by the Constitution and the laws whenever they are brought before the Court in a judicial proceeding." 7 R. C. L., 1050.

"It is generally recognized that the doctrine that the Courts will not reach the Governor in the performance of his duties, or anyone acting under his direction and by his authority in respect to any matter, *applies only within the scope of executive authority; outside thereof the principle*

*of equality before the law renders him and his agent liable to judicial remedies the same as any other person, except in so far as the dignity of his office should, and does, protect him, and them to some extent from coercive interference by judicial mandate.*" (Italics added.) 6 R. C. L., pp. 151, 152.

The case of *Constantin v. Smith* (D .C.), 57 F. (2d), 227, 239, is one of peculiar signficance and has special application to the matter before the Court because of the similarity of facts, and the notable similarity of constitutional and statutory laws of Texas, there discussed, with those of South Carolina. Counsel for defendants argue that that case and the case of *Sterling v. Constantin,* 287 U. S., 387, 53 S. Ct., 190, 195, 77 L. Ed., 375, which grows out of the same facts as those in *Constantin v. Smith, supra,* do not apply here because they were cases in the United States Courts. The contention has no force. The opinion of the three-judge Court in the *Constantin case* and of Chief Justice Hughes in the *Sterling case* state the grounds upon which they apply their holdings of law to cases involving state constitutional and statute laws. In the case of *Constantin v. Smith, supra,* it is said: "We hold * * * that, under the Constitution of Texas, Courts may not be closed, or their processes interfered with by military orders, that 'Courts cannot be ousted by the agencies detailed to aid them; nor can their functions be transferred to tribunals unknown to the Constitution'; * * * 'The Governor is at all times amenable to the Constitution and laws of the State. They are the charters of his powers, and in them he must find the authority for his official acts.'"

In the *Sterling* case, Chief Justice Hughes said:

"The appellants assert that the Court was powerless thus to intervene, and that the Governor's order had the quality of a supreme and unchallengeable edict, overriding all conflicting rights of property and unreviewable through the judicial power of the federal government.

"If this extreme position could be deemed to be well taken, it is manifest that the fiat of a State Governor, and not the Constitution of the United States, would be the supreme law of the land; that the restrictions of the Federal Constitution upon the exercise of state power would be but impotent phrases, the futility of which the state may at any time disclose by the simple process of transferring powers of legislation to the Governor to be exercised by him, beyond control, upon his assertion of necessity. * * * *When there is a substantial showing that the exertion of state power has overridden private rights secured by that Constitution, the subject is necessarily one for judicial inquiry in an appropriate proceeding directed against the individuals charged with the transgression."* (Italics added.)

Again, the Chief Justice said in the same opinion: "It does not follow from the fact that the executive has this range of discretion, deemed to be a necessary incident of his power to suppress disorder, that every sort of action the Governor may take, no matter how unjustified by the exigency or subversive of private right and the jurisdiction of the Courts, otherwise available, is conclusively supported by mere executive fiat. *The contrary is well established:* [Italics added.] What are the allowable limits of military discretion, and whether or not they have been overstepped in a particular case, are judicial questions."

In the companion case to the *Sterling case,* viz., that of *Constantin v. Smith,* the special three-judge Court held that the Governor of the State was held to be "without power to suspend Constitution and laws and deprive persons of access to Courts by proclamation of martial law." Syl. 12. In that case Judge Hutcheson, delivering the opinion, reviewed the West Virginia cases, and others, relied on there, as here, by counsel, and showed their weakness and fallacy.

The defendants are not in a position to demur to the ap-

plication of these two cases to the case at bar; they themselves, in the third defense of the return of Robert Gregory and Walter Stilley, Jr., have invoked the intervention of the United States power, and the support of the Federal Constitution. They allege: "That the plaintiffs in this action are not eligible to hold the offices involved, because they are in a state of rebellion and insurrection against the State of South Carolina and her duly constituted authorities, and consequently against the United States of America, as shown by the proclamation referred to, * * * and under the laws of this State, and under the provisions of the Fourteenth Amendment to the Constitution of the United States are forever barred from holding any office whatsoever, they having taken oaths to protect and defend the Constitution of the United States."

That the peculiar applicability of the *Constantin* and *Sterling cases* to the case before us may be seen, we reproduce the sections of the Texas Constitution construed therein, to show their resemblance to the provisions of our Constitution:

From the Texas Constitution, Article 1:

"Sec. 12. The writ of habeas corpus is a writ of right, and shall never be suspended."

"Sec. 13. All Courts shall be open."

"Sec. 19. No citizen of this State shall be deprived of life, liberty, property, privileges or immunities * * * except by the due course of the law of the land."

"Sec. 24. The military shall at all times be subordinate to the civil authority."

"The doctrine that the Courts will not control or interfere with the Governor in the performance of his duties applies only to acts within the scope of his executive authority, and when he steps aside from the sphere of his duty, and violates the law, he is amenable to the law, the same as any other person. The scope of his duty does not

extend to breaking the law. Within its scope acting as Governor, he is powerful, but outside thereof, through pretending to act as Governor, he is but an individual, and must bow to that underlying principle of our system that all men are equal before the law." 12 R. C. L., 1010.

We hold it to be the established rule that the discretion of the Governor to determine the existence of insurrection may not be interfered with by judicial authority. We hold it to be the established rule that the acts of the Governor after the declaration of a state of insurrection, which are in excess of his constitutional and legislative authority, are subject to review by the Courts.

The 28th day of October, 1935, the Governor issued his proclamation declaring that a state of insurrection existed in connection with the State Highway Department and the State Highway Commission. He ordered out the militia and Major Frank Barnwell, in command of the troops, under the orders of the Governor, placed machine guns at the approaches to the offices of the State Highway Department, and stationed armed soldiers at the doors of the Highway Department and the offices of the Highway Commission, and protected by armed troops, Joe Calus, Wade Sanders, Robert H. Gregory, Francis Drake, William M. Smoak, and Walter Stilley, Jr., took forcible possession of the offices and properties of the State Highway Department and the State Highway Commission; by force and arms denied to the State Highway Commissioners access and entrance to their offices; assumed the duties and privileges of these officers in the discharge of their functions as such commissioners, and continued to discharge them.

"No person shall in any case be subject to martial law or to any pains or penalties by virtue of that law, except those employed in the army and navy of the United States and except the militia in actual service, but by the authority of the General Assembly." Article 1, § 27, Constitution, 1895.

The General Assembly has not seen fit to confer on the Governor the power to declare martial law.

"Whenever any portion of the militia is employed in aid of the civil authority, the Governor, if in his judgment the maintenance of law and order will thereby be promoted, may by proclamation declare the county or city in which the troops are serving, or any specified portion thereof to be in a state of insurrection." Section 2896, Code 1932.

An inspection of the Governor's proclamation discloses that he has not declared any county or city to be in a state of insurrection.

Section 2891, Code 1932, provides: "In the event of war, insurrection, rebellion, invasion, tumult, riot, mob or body of men acting together by force with intent to commit a felony or to offer violence to persons or property or by force and violence to break and resist the laws of this State, or the United States, or in case of the imminent danger of the occurrence of any said events, or in event of public disaster the Governor shall have power to order the Organized Militia of South Carolina or any part thereof into the active service of the State, and to cause them to perform such duty as he shall deem proper."

Clearly this is the statute under which the Governor called out the militia.

It is patent that the phrase "cause them to perform such duty as he shall deem proper" means such duty as relates to the causes enumerated in the statute, in relation to which the Governor is given power to call out the militia.

It is borne in mind that at the time the proclamation of the Governor was issued declaring a state of insurrection, there was no violence existent in or threatened by the State Highway Department or the State Highway Commission.

When the Governor called out the militia and suspended the writ of habeas corpus, he, in effect, declared martial law.

Since the famous case of *Ex parte Milligan,* 4 Wall., 2 127, 18 L. Ed., 281, it has been held that martial law could

not prevail in times of peace, and while the Courts are open and functioning.

In a note to the case of *Commonwealth ex rel. Wadsworth v. Shortall,* 65 L. R. A., 193, it is said in defining martial law: "But the better opinion seems to be that it is that law, which, *of necessity obtains in and governs a tract of country in which there are active military operations."*

In the *Wadsworth case,* 206 Pa., 165, 55 A., 952, 954, 65 L. R. A., 193, 98 Am. St. Rep. 759, this is said: "Order No. 39 was, as said, a declaration of qualified martial law. Qualified, in that it was put in force only as to the preservation of the public peace and order, not for the ascertainment or vindication of private rights, or the other ordinary functions of government. For these the Courts and other agencies of the law were still open, and no exigency required interfere with their functions."

In the case of *Constantin v. Smith, supra,* the Court said: "When the Governor calls out the troops in Texas, he calls them out, not as a military, but as a civil officer. Their powers and duties are derived from, they must be found in, the civil law. At no time and under no conditions are their actions above Court inquiry or Court review."

In *Ex parte Lavinder,* a West Virginia case not cited by counsel for defendants, reported in 88 W. Va., 713, 108 S. E., 428, 429, 24 A. L. R., 1178, this is found:

"The substitution of military for the civil law in any community is an extreme measure. Socially, economically, and politically, it is deplorable and calamitous. Its sole justification is the failure of the civil law fully to operate and function, for the time being, by reason of the paralysis or overthrow of its agencies, in consequence of an insurrection, invasion, or other enterprise hostile to the State, and resulting in actual warfare. And then such substitution at any place within the State cannot extend beyond the limits of the theater of actual war.

"Martial law, the law of war, in territory where Courts are open and civil processes run, is totally incompatible

with, it cannot co-exist, with provisions such as are contained in Article 1, Bill of Rights of the Texas Constitution." *Constantin v. Smith, supra.*

Section 12, Art. 1, Texas Constitution, is as follows: "The writ of habeas corpus is a writ of right, and shall never be suspended."

Section 23, Art. 1, Constitution of South Carolina is as follows: "The privilege of the writ of habeas corpus shall not be suspended unless when, in case of insurrection, rebellion or invasion, the public safety may require it."

In *Ex parte Milligan, supra,* the Supreme Court of the United States said: "Martial rule can never exist where the Courts are open, and in the proper and unobstructed exercise of their jurisdiction. It is also confined to the locality of actual war."

In the case of *Sterling v. Constantin, snpra,* Chief Justice Hughes quoted the following proposition advanced by appellant's counsel as applicable to a state of insurrection where the militia has been called out: "That in a time of war the commander of an armed force (if in his opinion the exigencies of the country demand it, and of which he is to judge), has the power, within the lines of his military district, to suspend all civil rights and their remedies, and subject citizens as well as soldiers to the rule of his will; and in the exercise of his lawful authority cannot be restrained, except by his superior officer or the President of the United States."

The Chief Justice, commenting on the proposition, said: "If this position is sound to the extent claimed, then when war exists, foreign or domestic, and the country is subdivided into military departments for mere convenience, the commander of one of them can, if he chooses, within the limits, on the plea of necessity, with the approval of the Executive, substitute military force for and the exclusion of the laws, and punish all persons, as he thinks right and proper, without fixed or certain rules. The statement of this proposi-

tion shows its importance; for, if true, republican government is a failure, and there is an end of liberty regulated by law. Martial law, established on such a basis, destroys every guaranty of the Constitution, and effectually renders the 'military independent of and superior to the civil power.' * * * Civil liberty and this kind of martial law cannot endure together; the antagonism is irreconcilable, and, in the conflict, one or the other must perish."

It is within the province of this Court to inquire into and review the actions of the Governor with the view to determine whether, after declaring that a state of insurrection exists, he has exceeded the powers given him by the Constitution and the Statutes in pursuance thereof. To that end we must relate the things he has done to the purposes for which he declared that insurrenction existed and called out the militia to suppress it.

In seeking to ascertain the intent or purpose for which the proclamation declaring a state of insurrection to exist and calling out the militia, was issued, we may properly scan the proclamation itself and the contemporaneous statement to the citizens of South Carolina made by the Governor and published in the newspapers.

In the proclamation, as the ground for issuing it, the Governor said: "Being of the opinion that it is impractical to enforce by the ordinary course of judicial procedure the construction and laws of this State relating to and connected with the operation, management, construction and control of the highways of the State of South Carolina, coming under the jurisdiction directly or indirectly of the State Highway Department and/or the State Highway Commission, due to the rebellion, insurrection, resistance, and insurgency now in existence against the laws of the State of South Carolina in connection with the operation, policing, management and general control of the highways of this State coming under the jurisdiction and control of the State Highway Department and for the purpose of faithful execution of the laws

relating to and connected with the highways of the State of South Carolina and the Highway Department; and for the preservation of public peace and the property of the State of South Carolina: Now therefore etc."

So much of the statement of the Governor, referred to above, as is pertinent, is given below:

"To the Citizens of South Carolina:

"You are familiar with the efforts I have made to bring *the arrogant and dictatorial Highway Department of this State within the expressed wishes of a majority of South Carolina citizens.* This organization has grown so powerful and so indifferent to constituted authority that it long ago ceased to fill the purposes for which it was created, and has set itself up as a supreme government of our state, answerable neither to the people, the legislature, the attorney general, or the governor.

"This is an unsound condition. It is against all the principles of democracy and good government. When any group of men set themselves up as superior to the expressed will of the people, operating as a government of their own for the purpose of defying and obseructing the law, *it is necessary, in the interest of the sane and economical operation of such department, that action be taken, however drastic it may seem, to end such ring rule.*

"*As Governor of South Carolina, I am today placing the Highway Department under the control of the people. Your command as expressed at the ballot box last summer is being carried out, and acting in your name and in your behalf, I am taking charge of this department to end trickery and subterfuge, favoritism and irregularities* that have been characteristic of its management. * * *

"This board will arrange to give you $3.00 automobile license tags, and *after a brief extension that will be granted for the payment of* Licenses, these tags will become available for all privately owned and privately operated cars, and privately operated trucks of not more than one and one-half

ton capacity, upon the payment of $3.00 subject to any revision or modification that may be made by the 1936 legislature.

"In my inaugural address I stated that I hoped it would be possible to effect a reorganization of the Highway Department, and the removal of Ben Sawyer, without calling into use the full powers vested in my office by the Constitution and statutory law of the state. I have endeavored to do this by peaceful means, means so tedious in fact, that thousands of citizens in all sections of the state have appealed to me from time to time to take whatever action was necessary to bring the dictatorial policies of the road department to an end.* * *

*"Acting on a ruling of the attorney general who declared that there were four vacancies on the commission, I appointed four capable men to fill these places.* In order to avoid calling a meeting of the commission, it resorted to subterfuge and trickery, ceasing to hold regular meetings and attempting to transact business by telegraphic exchanges. Finally, when I was able to secure a meeting, it developed that a majority of the commissioners had entered into a conspiracy to prevent the seating of my appointees, and did prevent them taking office.

"After listening to the testimony introduced at the hearing recently held before me in which the Commissioners Hearon, Culler and Bethea under oath testified as to their lack of knowledge of the working of the Highway Department and their admission in effect that the Highway Department was run by one man, Ben Sawyer, together with the uncontradicted testimony of the policy of the Highway Department of changing bids behind closed doors in order to favor certain gasoline companies, together with the action of the Highway Department in paying fabulous sums for the mere renting of a truck from a friend of the department and the attitude expressed by the commissioners on the stand of their intention that they did not and would

not recognize constituted authority, together with other matters too lengthy to enumerate, convinced me beyond any doubt that this department had *not only set itself up as a government of its own, but was an unlawful assemblage to obstruct the legitimate enforcement of the laws of this state.*

"As your Governor, I expect to keep my campaign pledges constantly in mind, and while I will not be able to acomplish everything I had hoped for immediately, I reiterate my statement, that I shall not rest until all of these things have been achieved."

It is patent from these documents that the purpose of the Governor in declaring a state of insurrection to exist in the Highway Department and the Highway Commission is to carry out his campaign pledge to remove Ben Sawyer, Chief Highway Commissioner, from office. It is plain from the pronouncement in his statement that the gravamen of his charges against the Highway Commissioners is that they declined to vacate their offices at his order and make way for others attempted to be appointed by him. The commissioners in office were entitled to have the question thus made by the Governor decided by the Courts. There is no pretense that the Courts were not open and functioning. The Statutes of the state (Section 3098, Code 1932) give the method by which officers may be removed by the Governor. It requires him in writing to summons the officer against whom charges are made to appear before him, when the matter suggested as ground for removal shall be inquired into. The Act further provides that any such officer shall have the right of appeal from any such order of removal by the Governor. There is no doubt that His Excellency, the Governor, is familiar with this law. He set it in motion, and under its provisions called before him three members of the State Highway Commission, and entered upon an extended inquiry into their doings and actions as such commissioners. Without having made any order of removal, he suddenly dropped the proceedings, and adopted the drastic and revolutionary

method of declaring a state of insurrection in the Highway Department, calling out the militia and by force and arms depriving all the State Highway Commissioners, except W. A. Stilley, Jr., of their offices and appointing the defendants, Joe Calus, Wade Sanders, Francis Drake, W. M. Smoak, Robert Gregory, and W. A. Stilley, Jr., managers to take charge of the offices and properties of the State Highway Department and the State Highway Commission, and has directed them to discharge the duties thereof. He is maintaining them therein under the protection of the militia.

We repeat that this Court may not enjoin his declaration of a state of insurrection, but it has power to review what he did thereafter.

It does not need the reiteration of the authorities hereinabove recited to show that the avowed purpose of the Governor to remove Ben Sawyer and all of the plaintiffs as Highway Commissioners is wholly unrelated to the power given him by the Constitution and the Statutes to declare a state of insurrection, and is beyond that power. His use of the militia to take possession, under the muzzles of machine guns and rifles, of the offices of plaintiffs as State Highway Commissioners is without authority and is in excess of his constitutional power. His appointment of and maintenance of the defendants, Joe Calus, Francis Drake, Wade Sanders, Robert Gregory, W. M. Smoak, and Walter Stilley, Jr., in the place and stead of plaintiffs, is beyond his right and power. He has no power or right in law to use the militia to discharge the duties of a civil office. He has deprived the plaintiffs of the offices of State Highway Commissioners, of which they were in peaceful possession, and to the emoluments and privileges of which they were entitled without due process of law, in violation of the provisions of Article 1, § 5, of the Constitution of South Carolina, and Section 1 of the Fourteenth Amendment of the Constitution of the United States.

His actions and orders in the premises conferred on Joe Calus, Wade Sanders, Francis Drake, Robert Gregory, W. M. Smoak, and Walter Stilley, Jr., no right, power, or authority to take over and occupy the offices, papers, records, moneys, or any other properties of the State Highway Department and the State Highway Commission, and they are trespassers therein and thereabout.

The judgment of this Court is:

1. That the prayer of the complaint as to the defendants, Joe Calus, Wade Sanders, Francis Drake, Robert Gregory, W. M. Smoak, and Walter Stilley, Jr., be granted, and that these defendants be, and hereby are, perpetually enjoined and restrained from performing or attempting to perform any duties of the Highway Department of South Carolina and of the State Highway Commission, and from interfering in any way with the plaintiffs' conduct of such department, and with the affairs, moneys, or properties thereof.

2. That the temporary restraining order issued by Chief Justice Stabler on October 30, 1935, be continued of force as to E. P. Miller, State Treasurer, A. J. Beattie, Comptroller General, the Citizens & Southern Bank of South Carolina, the South Carolina National Bank and the Lower Main Street Bank, until the further order of this Court.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES CARTER, BONHAM, BAKER and FISHBURNE concur.